TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







ON MOTION FOR REHEARING









NO. 03-94-00284-CV







William P. Forsyth, et al., Appellants



v.



Lake LBJ Investment Corp., et al., Appellees







FROM THE DISTRICT COURT OF LLANO COUNTY, 33RD JUDICIAL DISTRICT


NO. 9849, HONORABLE B. B. SCHRAUB, JUDGE PRESIDING







 The Court's earlier opinion issued March 8, 1995 is withdrawn and the following
substituted therefor.

 This is an interlocutory appeal from a district court order denying class
certification. See Tex. Civ. Prac. & Rem. Code Ann. § 51.014(3) (West Supp. 1995). In their
single point of error, appellants (1) contend that the trial court abused its discretion by denying their
motion for class certification. We will affirm the order of the district court.




BACKGROUND


 The underlying action involves a dispute over the validity of restrictive covenants
that apply to all lot owners in the Horseshoe Bay subdivision ("Horseshoe Bay"), which is located
in Burnet and Llano counties. The appellees who were the original plaintiffs below (2) are all
developers of Horseshoe Bay. Appellants intervened in the trial court proceeding. Various
Horseshoe Bay property owners were defendants below, but are not involved in this appeal.

 Restrictive declarations or covenants apply to the Horseshoe Bay properties. 
Originally adopted by developer Lake Lyndon B. Johnson Improvement Corporation in 1971, the
declarations have been amended four times. (3) Defendants below sought to rally support among
Horseshoe Bay residents to challenge the enforceability of the declarations. The original plaintiffs
below sued in response, seeking a declaratory judgment with respect to the validity of the
declarations as well as damages under three causes of action. 

 Parties intervened on both sides of the action. Twelve Horseshoe Bay property
owners intervened to support the original plaintiffs below. Subsequently, appellants and eight
others intervened as counter-plaintiffs to support defendants below. Claiming to represent all
Horseshoe Bay property owners in a class action, appellants sought a declaratory judgment
pronouncing certain amendments to the declarations invalid. Appellants also sought damages on
behalf of the class alleging seven causes of action. 

 Appellants' vigorous attempts to secure greater participation in the action failed. 
In fact, within three months, three of the intervenors in support of appellants' position dropped
out of the lawsuit. Among the lot owners actually participating in the action, the number of those
in favor of the declarations exceeded the number opposed. 

 Seven months after intervening in the action, appellants and one other intervenor
filed a motion for class certification. (4) They requested that the trial court certify the intervenors
as representatives of a class encompassing all lot owners in the Horseshoe Bay development. All
appellees opposed the motion, and a hearing was held. None of the movants appeared at the class
certification hearing to testify in person; appellants Christine K. Forsyth and A. L. "Dusty"
Rhodes testified through deposition. Appellant James Crownover was the only intervenor
supporting the motion who appeared at the hearing and offered live testimony. At the conclusion
of the movants' presentation of their evidence at the class certification hearing, the trial court
denied class certification. The district court's order does not state the reason for the denial of
class certification, and the record does not contain findings of fact or conclusions of law, despite
appellants' timely request. But see Tex. R. App. P. 42(a) (the trial court need not file findings
of fact and conclusions of law). Appellants seek reversal of the trial court's order and ask us to
direct the trial court to certify their intervention as a class action.



STANDARD OF REVIEW


 We review a court order denying class certification using an abuse-of-discretion
standard. Hutchins v. Grace Tabernacle United Pentecostal Church, 804 S.W.2d 598, 601 (Tex.
App.--Houston [1st Dist.] 1991, no writ). A trial court has broad discretion in determining
whether to grant or deny class certification. American Express Travel Related Servs. Co. v.
Walton, 883 S.W.2d 703, 707 (Tex. App.--Dallas 1994, no writ h.). An appellate court must not
substitute its judgment for that of the trial court. Id. Even if a trial court determines an issue
differently than would an appellate court, the ruling does not necessarily constitute an abuse of
discretion. Dresser Indus., Inc. v. Snell, 847 S.W.2d 367, 371 (Tex. App.--El Paso 1993, no
writ) (citing Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 242 (Tex. 1985), cert.
denied, 476 U.S. 1159 (1986)); see also Vinson v. Texas Commerce Bank-Houston, Nat'l Ass'n,
880 S.W.2d 820, 824 (Tex. App.--Dallas 1994, no writ) ("[E]ven if certification would have been
proper, a denial may still not be an abuse of discretion.").

 In determining whether a matter should be litigated as a class action, a trial court
abuses its discretion if its decision is arbitrary, unreasonable, or without reference to any guiding
principles. Dresser Indus., 847 S.W.2d at 371. Further, a trial court abuses its discretion if it
does not properly apply the law to the undisputed facts, but does not abuse its discretion if it bases
its decision on conflicting evidence. Vinson, 880 S.W.2d at 823. To satisfy their burden,
appellants must "demonstrate that the undisputed evidence negates any valid rationale by which
the trial court could have denied class certification." Id. at 825. To do this, appellants must
provide an appellate record sufficient to demonstrate error. Tex. R. App. P. 50(d); Employers
Casualty Co. v. Texas Ass'n of Sch. Bds. Workers' Compensation Self-Ins. Fund, 886 S.W.2d
470, 473 (Tex. App.--Austin 1994, writ requested); Fort Bend County v. Texas Parks & Wildlife
Comm'n, 818 S.W.2d 898, 900 (Tex. App.--Austin 1991, no writ).

 In making its class certification decision, the trial court can consider the pleadings
and other material in the record, along with the evidence presented at the hearing. Employers
Casualty Co., 886 S.W.2d at 474. The appellate court reviews the entire record to determine if
the trial court abused its discretion in denying certification. See Chrysler Corp. v. Blackmon, 841
S.W.2d 844, 852-53 (Tex. 1992). We must determine whether the record contains some evidence
in support of the order. Vinson, 880 S.W.2d at 828. We view the evidence in a light most
favorable to the trial court's action, entertaining every presumption that favors its judgment. Id.
at 823; see also Texas Dep't of Mental Health & Mental Retardation v. Petty, 778 S.W.2d 156,
160-61 (Tex. App.--Austin 1989, writ dism'd w.o.j.); Brittain v. General Tel. Co., 533 S.W.2d
886, 889 (Tex. Civ. App.--Fort Worth 1976, writ dism'd) (citing Richardson v. Kelly, 144 Tex.
497, 191 S.W.2d 857 (1945)) (observing that trial court's finding as to class certification is
entitled to great weight on appeal). If the record supports the court's ultimate decision, we cannot
say that the trial court abused its discretion. 



REQUIREMENTS OF CLASS CERTIFICATION


 Texas Rule of Civil Procedure 42(a) sets out the following prerequisites for a class
action:



(1) the class must be so numerous that joinder is impracticable (numerosity);


(2) questions of law or fact must be common to the class (commonality);


(3) the class representatives must have claims or defenses typical of the class
(typicality); and


(4) the class representatives must fairly and adequately protect the interests of
the class (adequacy of representation).



Tex. R. Civ. P. 42(a). In addition, Rule 42(b) enumerates the following standards for
maintenance of a class action:



(1) individual suits would result in inconsistent or varying adjudications;


(2) an adjudication concerning an individual member would be dispositive of
interests of other members, or would substantially impair the ability of those
members to protect their interests;


(3) the party opposing the class has acted or refused to act on grounds generally
applicable to the class;


(4) the suit affects specific property; and


(5) common questions of law or fact predominate over questions affecting only
individual members, and a class action is the superior method of resolving
the controversy.



Tex. R. Civ. P. 42(b). A trial court may certify a class action if a plaintiff establishes all four
prerequisites in Rule 42(a), and meets at least one of the criteria for class maintenance in Rule
42(b). See Vinson, 880 S.W.2d at 824 (observing that Texas law does not require trial court to
certify class action even if plaintiff satisfies Rule 42 requirements).

 The record reflects that appellants established the numerosity, commonality, and
typicality prerequisites. Numerosity is not disputed. (5) Commonality is evident. If the trial court
were to determine the enforceability of the declarations as to one Horseshoe Bay resident, the
adjudication would resolve the issue as to all other residents simultaneously. Additionally,
appellants' claims are typical of those of the class; appellants possess the same interests as all
other owners of Horseshoe Bay property. In theory, all class members have the same claims as
appellants, even though it may not be in their best interests to assert their claims. (6) However,
appellants have failed to demonstrate their adequacy of representation.



ADEQUACY OF REPRESENTATION


 To comply with the adequacy of representation prerequisite, appellants must show
that the class representatives will fairly and adequately protect the interests of the class members. 
Tex. R. Civ. P. 42(a)(4). This requirement has two basic components: (1) an absence of
antagonism between the class representatives and the class members, and (2) an assurance that the
representatives will vigorously prosecute the class members' claims and defenses. Wiggins v.
Enserch Exploration, Inc., 743 S.W.2d 332, 335 (Tex. App.--Dallas 1987, writ dism'd w.o.j.). 
Whether the representatives adequately represent the class is a question of fact, which must be
determined by reference to the circumstances of each case. Dresser Indus., Inc., 847 S.W.2d at
373. Factors affecting the determination include:



(1) adequacy of counsel; 


(2) potential conflicts of interest; 


(3) the personal integrity of the plaintiffs; 


(4) the representatives' familiarity with the litigation and their belief in the 
legitimacy of the grievance; 


(5) whether the class is unmanageable based on geographical limitations; and 


(6) whether the plaintiffs can afford to finance the class action.



Id.; see also Adams v. Reagan, 791 S.W.2d 284, 291 (Tex. App.--Fort Worth 1990, no writ)
(citing Horton v. Goose Creek Indep. Sch. Dist., 690 F.2d 470, 484 (5th Cir. 1982), cert. denied,
463 U.S. 1207 (1983)) ("[T]he trial court must inquire into the zeal and competence of class
counsel and into the willingness and ability of the representatives to take an active role in and
control the litigation and to protect the interests of absentees.").



(1)  Intra-Class Antagonism

 We first examine whether any antagonism exists between the class representatives
and the class members. A conflict that goes to the very subject matter of the litigation will defeat
a party's claim of representative status. Adams, 791 S.W.2d at 291. Federal cases offer guidance
on this issue. (7) In Horton v. Goose Creek Independent School District, 690 F.2d 470 (5th Cir.
1982), cert. denied, 463 U.S. 1207 (1983), the court addressed the relationship between intra-class antagonism and the adequacy of representation prerequisite. According to the court, class
certification may be denied for lack of adequate representation if there is a possibility of
significant disagreement within the proposed class. See id. at 485-86; see also Swain v. Brinegar,
517 F.2d 766, 780 (7th Cir. 1975) (denying certification for lack of adequate representation
because possibility existed that some class members would not support class action); Ihrke v.
Northern States Power Co., 459 F.2d 566, 572-73 (8th Cir. 1972) (denying certification for lack
of typicality because some class members might oppose objectives of class action). Furthermore,
where there is "hard evidence of real disagreement" within the class, courts are more inclined to
deny certification. Horton, 690 F.2d at 485; see also East Tex. Motor Freight Sys. Inc. v.
Rodriguez, 431 U.S. 395, 405 (1977) (denying certification for lack of adequate representation
because, in part, certain class members voted against named plaintiffs' objectives at union
meeting); Peterson v. Oklahoma City Hous. Auth., 545 F.2d 1270, 1273 (10th Cir. 1976) (finding
that antagonism existed and that certification should be denied for lack of adequate representation
where many potential class members openly opposed object of action). In any event, the party
opposing certification has only a slight evidentiary burden to show that intra-class antagonism may
develop. Horton, 690 F.2d at 486. 

 In the instant cause, the validity of the declarations is not only the subject matter
of the underlying litigation, but also the source of the dispute between the proposed
representatives and the opposing twelve intervening class members. The opposition of twelve
class members does not, by itself, indicate that a majority of the class members opposes
appellants' position. However, among the class members actively participating in the action,
those opposing appellants outnumber those who support them. This division constitutes actual
intra-class antagonism. Such an inconsistency between appellants' interests and those of class
members regarding the very subject matter of the litigation weighs against appellants' claim of
representative status. Adams, 791 S.W.2d at 291. (8)

 Appellants rely on Horton for the proposition that certification would be
appropriate, notwithstanding the presence of intra-class antagonism, because appellees would
adequately represent the interests of any dissident absentee class members. (9) Horton is
distinguishable because actual intra-class antagonism, as opposed to the mere possibility of
antagonism, exists in the instant case. The possibility that appellees, and those class members
intervening to support appellees, will represent any dissenting views within the class is a factor
to be weighed in determining adequacy of representation. However, it does not mandate class
certification when intra-class antagonism actually exists. (10)



(2)  Zealous Representation

 Next, we consider whether the representatives would avidly pursue the claims and
defenses of the class members. Although an attorney represented appellants at the class
certification hearing, the failure of the movants for class certification and all but one intervenor
to attend the hearing in person casts doubt upon the enthusiasm with which the proposed
representatives would act on behalf of the class. Appellants relied almost entirely on their counsel
at the certification hearing. This fact weighs against certification. See Adams, 791 S.W.2d at 291
(providing that trial court must consider whether representatives will "take an active role in and
control the litigation . . . to protect the interests of absentees" in determining adequacy of
representation prerequisite).

 Federal authority is instructive on the issue of zealous representation. In Weisman
v. Darneille, 78 F.R.D. 669 (S.D.N.Y. 1978), the court denied class certification because
representation was inadequate. In support of its decision, the court wrote:



Plaintiff's superfluous role here does not meet the requirements of Rule 23(a)(4). 
The class is entitled under that rule to more than competent counsel. It must also
be assured that it will have an adequate representative, one who will check the
otherwise unfettered discretion of counsel in prosecuting the suit and who will
provide his personal knowledge of the facts underlying the complaint. . . . 
Plaintiff's evident willingness to rely on counsel's ability to protect the interests of
the class is inconsistent with the participation required of an adequate class
representative.


 

Id. at 671. Similarly denouncing apathetic class representation, another court wrote: "The class
is entitled to more than blind reliance upon even competent counsel by uninterested and
inexperienced representatives." In re Goldchip Funding Co., 61 F.R.D. 592, 594 (M.D. Pa.
1974); see also Pashek v. Arizona Bd. of Regents, 82 F.R.D. 62, 64 (D. Ariz. 1979) (finding
class representation inadequate because representative passively acquiesced to decisions of her
attorney in seeking class certification).



CONCLUSION


 The record shows that obvious antagonism exists between appellants and at least
twelve class members who intervened and oppose appellants' objectives. This antagonism
regarding the very subject matter of the underlying litigation suggests a real possibility of conflict
between a significant number of the proposed class members and those who seek to be class
representatives. Moreover, the record does not indicate that appellants have zealously pursued
the class members' claims and defenses; they have neither taken an active role in nor taken control
of the litigation. In light of the record evidence, we cannot say that appellants or other
intervenors will adequately and fairly protect the interests of the class members. The record
suggests a reasonable basis for the trial court to have denied class certification for lack of adequate
representation. 

 Even though a case concerning the construction of restrictive covenants is uniquely
suited for a class action, (11) the trial court has broad discretion in determining whether to grant or
deny class certification. From the record, the trial court could have determined that appellants
and the other intervenors may not adequately and fairly protect the interests of the class. Based
on the record, we cannot say that the trial court abused its discretion when it denied class
certification. Appellants have failed to prove that the undisputed evidence negates any valid
rationale by which the trial court could have denied certification. Because appellants have not
demonstrated that they met the adequacy of representation prerequisite required by Rule 42(a),
we do not reach the Rule 42(b) elements. Accordingly, we overrule appellants' point of error and
affirm the order of the trial court.




 

 Marilyn Aboussie, Justice

Before Justices Powers, Aboussie and B. A. Smith

Affirmed

Filed: July 19, 1995

Publish
1. The appellants are William P. Forsyth and Christine K. Forsyth, Trustees of the Forsyth
Living Trust; Forsyth Properties, Ltd.; A. L. "Dusty" Rhodes; and James D. Crownover.
2.   The appellees who were the original plaintiffs below are Lake LBJ Investment Corp.;
Lake Lyndon B. Johnson Improvement Corporation; Horseshoe Bay Maintenance Fund,
Inc.; Horseshoe Bay Resort and Conference Center, Inc.; Norman C. Hurd, individually and
as executor of the estate of Dorothy E. Hurd, deceased; Norman C. Hurd, Trustee #1;
Wayne Hurd; and Eileen Hurd. Appellees who intervened in support of the original
plaintiffs below are Shelton Thibodeaux and Jennie Thibodeaux; Jim Rowe and Melissa
Rowe; Al Broome and Renata Broome; Ted Burget and Sally Burget; Roland Wilson and
Carolyn Wilson; Sue Ann Mabray; and Faye Morgan.
3.   For convenience, we will refer to the declarations and their amendments as "the
declarations."
4.  Appellant James D. Crownover did not move for class certification; movant Thomas
Norwood is not an appellant.
5.   Appellants presented proof that potential class membership would exceed 6,600
Horseshoe Bay lot owners. Conceding that the numerosity requirement was satisfied,
appellees did not present contrary evidence.
6.   See Horton v. Goose Creek Indep. Sch. Dist., 690 F.2d 470, 485 n.27 (5th Cir. 1982), cert.
denied, 463 U.S. 1207 (1983). According to the court in Horton, typicality and adequacy of
representation are closely related, "for demanding typicality on the part of the representative helps
insure his adequacy of representation." Id. Because some analytical overlap necessarily occurs
in ascertaining whether these two prerequisites are satisfied, it makes organizational sense to
consolidate our inquiry. As did the Horton court, we will analyze the question of intra-class
antagonism under the adequacy of representation requirement. 
7.   Because Rule 42 is patterned after the federal class action rule, cases interpreting the
federal rule are persuasive. Ball v. Farm & Home Sav. Ass'n, 747 S.W.2d 420, 422-23 (Tex.
App.--Fort Worth 1988, writ denied); RSR Corp. v. Hayes, 673 S.W.2d 928, 931-32 (Tex.
App.--Dallas 1984, writ dism'd).
8.   The record also reflects previous legal disputes between two proposed representatives and
certain appellees. In addition, we note that the record suggests that the challenged declarations
were unanimously ratified by the elected Board of Directors of the Horseshoe Bay Property
Owners' Association.
9.   The defendant in Horton, who opposed the class action, offered no proof of actual
antagonism within the proposed class. Rather, he asserted that the mere possibility of antagonism
existed because no potential class members, other than the three named plaintiffs, complained
about the practices in question. Horton, 690 F.2d at 485. Agreeing with the defendant that "a
very real possibility" of antagonism existed among the proposed class members, the court
observed that class certification may be denied in such circumstances. Id. However, the court
went on to certify the class, reasoning that the defendant would adequately represent the views
of any dissenting absentee class members. Id. at 487-88.
10.  Horton is also distinguishable from the instant case based on a difference between the federal
and Texas class action rules. Under the federal rule, absent class members have the right to opt
out of the class action. Fed. R. Civ. P. 23(c). The theory behind this procedural escape hatch
is that courts are reluctant to bind people to class action judgments that they do not approve. 
Horton, 690 F.2d at 487. Thus, with the opt-out provision in mind, a number of federal courts
have certified class actions despite substantial intra-class antagonism. See id. at 485 (and cases
cited therein). 


 The Texas class action rule does not contain a comparable provision. Instead of opting
out of the action, absentee class members opposing their inclusion in the class action may only
"appear before the court and challenge the court's determinations as to the class and its
representatives." Tex. R. Civ. P. 42(c)(2). In the instant case, twelve potential class members
intervened in the underlying litigation. Together with any other proposed class members who
oppose the class action, those intervenors cannot opt out if the class is certified. Instead, they
would be forced to support an action that is antagonistic to their own interests simply because they
live in Horseshoe Bay. See Pashek v. Arizona Bd. of Regents, 82 F.R.D. 62, 64 (D. Ariz. 1979)
(recognizing that heightened standard of scrutiny applies in determining adequacy of
representation when opt-out provision of federal class action rule does not apply).
11.  See Townplace Homeowners' Ass'n v. McMahon, 594 S.W.2d 172, 177 (Tex. Civ.
App.--Houston [1st Dist.] 1980, writ ref'd n.r.e.) ("A suit for construction of restrictive covenants
is especially suited for class action litigation."); Adams v. Owens, 519 S.W.2d 260, 261 (Tex.
Civ. App.--Beaumont 1975, writ ref'd n.r.e.) (recognizing that construction of restrictive
covenants "is a question touching each owner of lots in [an] addition, with common questions of
law and fact," and noting "that this is the type of situation uniquely designed for a class action").